UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRI COOPER, et al.                          Case No. 1:10-cv-271
            Plaintiffs                        Weber, J.
                                              Litkovitz, M.J.

      vs

JENNIFER ERNST,                               REPORT AND
            Defendant                         RECOMMENDATION

      Plaintiffs Carin Allen, Terri Cooper, individually and as guardian and mother of her

minor son T.W., and Cooper's minor son T.W, by and through his mother, bring this action

under 42 U.S.C. § 1983 and Ohio state law against Jennifer Ernst, a police officer employed by

the City of Cincinnati.  Plaintiffs sue defendant Ernst in her individual capacity only.  This matter

is before the Court upon defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P.

12(b)(6) (Doc. 13), plaintiffs' response in opposition to defendant's motion (Doc. 14), and

defendant's reply memorandum in support of the motion.  (Doc. 15).

**I. Facts**

      Plaintiffs' complaint makes the following allegations:  On July 9, 2009, plaintiffs Terri

Cooper and Carin Allen were socializing outside Cooper's residence accompanied by several

friends and minor children ranging from 1½ to 5 years of age.  (Doc. 1 at ¶ 7).  Defendant was

near the premises conducting an article search for a missing firearm with her K-9 partner Bak, a

police dog trained to locate articles by tracking the residual human scent left on them.  (*Id.* at ¶¶

8, 9).  The City of Cincinnati Police Procedure Manual, which describes an article search as a

1

search for evidence or property, does not authorize "off-lead deployment" of a police dog for such searches.  (*Id.* at ¶ 9).

The complaint further alleges that defendant Ernst ordered everyone, including plaintiffs, to "get back in the house."  (*Id.* at ¶ 10).  As plaintiffs started to comply with defendant's order, defendant deployed the dog off-lead.  (*Id.* at ¶ 11).  The dog proceeded to chase the plaintiffs into the premises that defendant had directed them to enter.  (*Id.* at ¶ 11).  The dog ran over 1½ year old T.W., who was still on the doorstep of the residence when the dog charged into the house, forcing him to fall and injure his head on the threshold of the front door.  (*Id.* at ¶¶ 13, 14).  Inside the home, the dog chased plaintiff Allen, who had a pre-existing fear of dogs, up the stairs.  (*Id.* at ¶¶ 15, 16).  Allen fell while running up the stairs and was injured.  (*Id.* at ¶ 16).  The dog remained inside the residence for several minutes before defendant retrieved him.  (*Id.* at ¶ 17).  Plaintiff T.W. suffered injuries to his forehead and back and emotional distress, plaintiff Cooper suffered emotional distress, and plaintiff Allen suffered injuries to her hip and abdomen in addition to being terrified by her encounter with the dog.  (*Id.* at ¶ 19).

Plaintiffs bring a claim against defendant Ernst under 42 U.S.C. § 1983 for violation of their right under the Fourth Amendment to the United States Constitution to be free from excessive force (First Claim); a claim under state law for assault and battery (Second Claim); and a claim under state law for intentional and/or negligent infliction of severe emotional distress (Third Claim).  Plaintiffs seek compensatory and punitive damages, as well as costs, reasonable attorney fees under 42 U.S.C. § 1988, and prejudgment interest.

## II. Defendant's Motion to Dismiss

Defendant Ernst moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 13). Defendant claims that she is entitled to qualified immunity on plaintiffs' excessive force claim because plaintiffs were not seized by defendant so as to give rise to a claim under the Fourth Amendment. (*Id*. at 4-5). Defendant argues that she did not terminate plaintiffs' freedom of movement in any way and that plaintiffs do not allege that she had them under her custody or control. Defendant contends there is no allegation that plaintiffs were the subject of an arrest, detention, search or interrogation. Rather, defendant argues that plaintiffs were onlookers to the article search and that she directed them to leave the search area and to go inside for their own safety while she conducted the search. Defendant contends that she did not take hold of, accompany or detain plaintiffs; she had no control over their movements other than to direct them away from the search site; and although plaintiffs allege that she told them to "get back in the house" (Doc. 1 at ¶ 10), they do not allege that she told them "to enter the residence for a specified amount of time, or to remain there until officers allowed them to leave." (Doc. 13 at 5). Defendant argues that because there is no factual basis for finding that she seized plaintiffs, the complaint fails to plead with particularity facts which establish a plausible Fourth Amendment claim.

Defendant further argues that plaintiff's complaint fails to allege a plausible claim that she violated plaintiffs' due process rights under the Fourteenth Amendment. (*Id*. at 5-6). Defendant contends that in order to successfully plead an excessive force claim under the Fourteenth Amendment, plaintiffs must show that excessive force was used against them during

a pre-trial detention following an arrest.  Defendant argues that because plaintiffs do not allege

that they were arrested, they cannot pursue a claim for relief under the Fourteenth Amendment.

Defendant contends that if plaintiffs' excessive force claim is dismissed on qualified

immunity grounds, the Court should decline to exercise supplemental jurisdiction over plaintiffs'

state law claims.  (*Id.* at 3).  If the Court were to address the merits of the state law claims,

defendant argues the claims must be dismissed for failure to state a claim for relief.  Defendant

contends that plaintiffs fail to allege a plausible claim for assault and battery because there is no

allegation defendant intentionally used force against them.  (*Id.* at 5-6).  Rather, according to

defendant, plaintiffs admit she told them to leave the scene of an article search, defendant

subsequently began to engage in that search with her canine partner, and defendant immediately

retrieved the dog from plaintiffs' residence when the dog followed plaintiffs inside. Defendant

contends there are no allegations which suggest she intended for the dog to follow plaintiffs into

the residence and no allegations that she made a threat to plaintiffs.

Finally, defendant argues that the complaint fails to state a plausible claim for intentional

or negligent infliction of emotional distress.  (*Id.* at 6-7).  Defendant contends that the complaint

presents no facts to show she intended to cause plaintiffs emotional distress; there are no

allegations which establish that defendant's conduct was extreme or outrageous; and there are no

facts to show that the mental anguish suffered by plaintiffs is very serious and of a nature that no

reasonable person could be expected to endure it.  Defendant argues that the claim for negligent

infliction of emotional distress must be dismissed because plaintiffs do not allege they were

bystanders to an accident or that they suffered serious emotional distress as a result of their

encounter with defendant.

In response to defendant's motion to dismiss, plaintiffs clarify they are not claiming the use of force in this case is governed by Fourteenth Amendment principles, but rather they claim that the Fourth Amendment, which prohibits unreasonable seizures, applies to defendant's actions through the Fourteenth Amendment. Plaintiffs allege that a seizure occurs under the Fourth Amendment when "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police and go about his business,'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991), or whenever an officer, through some show of authority, restrains an individual's "freedom to walk away." (Doc. 14 at 6-7, citing *Terry v. Ohio*, 392 U.S. 1, 16 (1967)). Plaintiffs allege that the critical inquiry is "whether a reasonable person would feel free to terminate his or her encounter with [the] police and walk away, ignoring a police request." (*Id.*, citing *United States v. Drayton*, 536 U.S. 194, 201 (2002)). Plaintiffs further argue that a seizure occurs "not only where a reasonable person would not feel free to leave, but also where a reasonable person would not 'feel free to *remain* somewhere.'" (*Id.* at 7, citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 833 (6th Cir. 2005)). Plaintiffs contend that so long as an individual continues to comply with an officer's order, a seizure is taking place. (*Id.*, citing *Gardenhire v. Schubert*, 205 F.3d 303, 312 (6th Cir. 2000)).

Plaintiffs argue that they were seized within the meaning of the Fourth Amendment when defendant Ernst ordered them to "get back in the house." (*Id.* at 7-8). Plaintiffs claim that a reasonable person, when issued this command by a uniformed police officer accompanied by a canine, would not believe she was free to remain outside the house. Instead, that individual would believe she had no choice but to obey the command and confine herself inside her home.

5

Plaintiffs claim that defendant seized them for Fourth Amendment purposes by restricting their movement in this manner. Plaintiffs contend it is immaterial that they were not the subject of an arrest, detention, search or interrogation. Plaintiffs further assert it is irrelevant that defendant did not order them to remain in the house for a specified amount of time or until the officer allowed them to leave.

Plaintiffs claim that in addition to being seized, they were subjected to excessive force when defendant deployed the police dog off-lead. (*Id*. at 8-11). Plaintiffs assert that the government interest at stake - finding a misplaced weapon - is legitimate. However, plaintiffs claim the government's interest is outweighed by their interest in being free from unwarranted assault by a police canine and their personal safety interests. Plaintiffs allege that defendant could have easily conducted the search on-lead, Cincinnati Police Department protocol mandates that article searches be conducted in this manner, and there was no exigency that warranted deploying the dog off-lead.

Finally, plaintiffs claim that defendant is not entitled to qualified immunity because it was clearly established before this incident that the off-lead deployment of a police dog where the government interest is slight and the intrusion on the individual's Fourth Amendment rights is severe is unreasonable. (*Id*. at 11-12).

Defendant has submitted matters outside of the pleadings with their reply memorandum in support of the motion to dismiss. (Doc. 15, Atts. 1-6). The documents include a "Citizen Complaint Resolution Process" disposition report (Att. 2), a "Use of Canine" report (Att. 3), a police incident report (Att. 4), and an interdepartmental memorandum regarding defendant's use of the police dog (Att. 5). Defendant argues that the Court may consider the documents in

6

determining whether to grant the motion to dismiss without converting the motion to one for

summary judgment.  (*Id.* at 2, citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th Cir. 2001)

(although courts typically look only to the substance of the complaint in determining whether to

grant a motion to dismiss, the Court may examine public documents without converting the

motion into one for summary judgment.).

### III.  Rule 12(b)(6) Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim

upon which relief can be granted."  When considering a motion to dismiss pursuant to Rule

12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw

inferences in a light most favorable to the plaintiff.  *Erickson v. Pardus,* 551 U.S. 89, 93 (2007);

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007); *Directv, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007).

A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  To avoid dismissal for failure to state a claim

for relief, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

(quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 570).  While the Court

must accept all well-pleaded factual allegations as true, it need not "accept as true a legal

conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v.

Allain*, 478 U.S. 265, 286 (1986)).  The complaint need not contain "detailed factual allegations,"

but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 557). While the plaintiff need not plead specific facts, his statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93 (citations omitted).

In addition to the allegations in the complaint, the Court may also consider on a Rule 12(b)(6) motion to dismiss materials which are integral to the complaint, public records, or materials which are otherwise appropriate for the taking of judicial notice. *Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 360-61 (6th Cir. 2001); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

## IV. Qualified Immunity Standard

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but also from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant

8

is not entitled to qualified immunity. *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 605 (6th

Cir. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

Once a defendant raises a qualified immunity defense to a claimed constitutional

violation, the plaintiff must satisfy a two pronged analysis:  (1) Taken in the light most favorable

to the party asserting the injury, do the facts alleged show that the official's conduct violated a

constitutional right, and (2) if a violation could be made out on a favorable view of the plaintiff's

submissions, was the right clearly established at the time of the injury? *Saucier*, 533 U.S. at 201.

In its discretion, the court may initially address either of these questions in light of the

circumstances of the particular case before it when resolving an official's qualified immunity

claim. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 818 (2009).

The qualified immunity analysis "must be undertaken in light of the specific context of

the case, not as a broad general proposition." *Saucie*r, 533 U.S. at 201.  "[T]he right the official

is alleged to have violated must have been 'clearly established' in a more particularized, and

hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right." *Baker*, 471 F.3d at 605

(quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).  "The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." *Id*. at 606 (citing *Brosseau*

*v. Haugen*, 543 U.S. 194, 198-99 (2004) (quoting *Saucier*, 533 U.S. at 201-02).  Thus, in the

context of an excessive force claim, it is not enough for the plaintiff to show that the defendant's

use of force was excessive under the Fourth Amendment in order to defeat qualified immunity.

Rather, the plaintiff must show that the defendant had notice that the manner in which the force was used had been previously proscribed. *Id.*

In inquiring whether a constitutional right is clearly established, the Court must look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, and finally to decisions of other circuits. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)).

**V.  Law Governing the § 1983 Claim**

To establish a claim under 42 U.S.C. § 1983, the plaintiff must prove that "(1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). The federal right at issue here is plaintiffs' constitutional right to be free from the use of excessive force. An excessive force claim that arises out of a seizure is properly analyzed under the Fourth Amendment. *See Ciminillo v. Streicher*, 434 F.3d 461, 464-65 (6th Cir. 2006). An excessive force claim that arises outside the context of a seizure must be analyzed under the due process clause of the Fourteenth Amendment. *Id.* Accordingly, the threshold issue for purposes of determining whether plaintiffs have adequately pled a Fourth Amendment claim is whether the facts alleged in the complaint allow the Court to draw the reasonable inference that plaintiffs were seized within the meaning of the Fourth Amendment. *See id.* at 465.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures . . ." U.S. Const. amend. IV. It is clearly established that "not all personal intercourse between policemen and citizens involves 'seizures' of persons."

10

*Terry*, 392 U.S. at 19, n.16. Generally stated, only when a police officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [the Court] conclude that a 'seizure' has occurred." *Id.* The Supreme Court in *Brower v. County of Inyo*, 489 U.S. 593 (1989) explained when a seizure takes place:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Id.* at 596-97 (emphasis in the original).

Plaintiffs cite two Sixth Circuit cases for the proposition that a seizure occurs not only where an officer through some show of authority restrains an individual's freedom to walk away, but also where a reasonable person would not feel free to remain somewhere. The first of these two cases is *Bennett v. City of Eastpointe*, 410 F.3d 810, 833 (6th Cir. 2005). The Court in *Bennett* held that a Fourth Amendment seizure occurred initially because (1) the officer made a show of authority by activating his siren to stop the plaintiff and his friends, who were riding their bicycles, and (2) the plaintiffs submitted to the show of authority by stopping their bikes. *Id.* at 833. The Court determined that this stop was reasonable. *Id.* at 833-34. The Court held that the plaintiff was also seized when the officer ordered him to walk his bike back to Detroit after the initial stop and then "escorted" him there by following the plaintiff in the police car, watching him cross the road to ensure that he complied. *Id.* at 834. The Court stated that "Fourth Amendment jurisprudence suggests a person is seized not only when a reasonable person would not feel free to leave an encounter with police, but also when a reasonable person would

11

not feel free to *remain* somewhere, by virtue of some official action." *Id.* (emphasis in original) (citing cases).

The second case plaintiffs cite for the proposition that a seizure takes place when a person would not feel free to remain somewhere as the result of an officer's show of authority is *Gardenhire v. Schubert*, 205 F.3d 303, 312 (6th Cir. 2000). The issue in *Gardenhire* was whether the plaintiffs' detention, though not a formal arrest, was tantamount to an arrest so as to require probable cause under the Fourth Amendment. The Court framed the determinative question in that case as "whether a reasonable jury could find that a person in the [plaintiffs'] position would have felt free to leave." *Id.* at 314. The Court concluded a jury could find that a reasonable person in the plaintiff's position would not have felt free to leave in view of the following facts: (1) the officer told the plaintiffs at their residence they "needed to go" to the police station; (2) the officer read them their Miranda rights at the police station; (3) the officer questioned the plaintiffs extensively at the police station; (4) the officer told the plaintiffs later that they "needed to go" to the Justice Center; (5) the officer instructed the plaintiffs that they "needed to follow" a police officer to the station; and (6) the officer advised the plaintiffs that they would be booked on criminal charges and released on bond. *Id.* The Court further determined that once the police removed the plaintiffs from their home to the police station, "the encounter took on an arrest-like nature." *Id.* (citing *Hayes v. Fla.*, 470 U.S. 811, 815-16 (1985)). The Court observed that a "police officer's statement that 'you need to go' somewhere carries substantial authoritative weight" and that "very few people could hear such a directive from a police officer and still think they were free to act otherwise." *Id.*

12

In addition to these Sixth Circuit cases, plaintiffs cite two decisions from the Fourth Circuit involving canine searches which are illustrative of the intent requirement for a seizure. In the first of these cases, *Vathekan v. Prince George's County,* 154 F.3d 173, 178 (4th Cir. 1998), the Court found that a seizure occurred when a police dog bit an innocent individual in her home, where the police suspected a burglary might be in progress. The relevant facts of that case were the police unleashed a police dog inside the house and gave the command to "Find him!"; it was undisputed once that command was given, the dog would bite anyone it found; the officer knew there was a person behind the interior door, who the officer suspected might have been a burglar; and by allowing the dog to pass through the interior door, the officer intended the dog to find and bite that person. *Id.* Because the officer deployed the dog to find, bite and detain the individual who turned out to be the plaintiff, the Court determined the plaintiff had been seized under the Fourth Amendment even though she was an innocent target.[1] *Id.* at 178-79.

In the second case, *Melgar ex rel. Melgar v. Greene,* 593 F.3d 348, 354 (4th Cir. 2010), a teenage boy was reported missing when he wandered off from a party after becoming intoxicated. The boy, who had fallen asleep in a shrub, was accidentally bitten by a police patrol dog on a fifteen-foot lead who was assisting the police officer in his search for the boy. The Court noted that in order for a seizure to occur, an officer need not "seize an individual in the precise manner intended." *Id.* Rather, "[i]t is sufficient that the detention is 'willful' and not merely the consequence of 'an unknowing act.'" *Id.* (quoting *Brendlin v. California,* 551 U.S. 249, 254

---

[1] The Court did not go beyond determining that a seizure had occurred and resolve the issue of whether the officer's use of the dog constituted excessive force. Rather, the Court found that because there was a factual dispute about whether the officer failed to give a warning before sending his dog into the house, the Court could not grant summary judgment on qualified immunity grounds. *Id.* at 180.

(2007). "[S]o long as the *instrumentality* is intended, a seizure occurs even if the *degree* of the instrumentality's effectiveness was unanticipated." *Id.* (emphasis in original). The Court therefore held that because the officer specifically used his dog to locate and stop the teenager, the teenager "was seized 'by the very instrumentality set in motion . . . to achieve that result.'" *Id.* at 354 (citing *Brower*, 489 U.S. at 599).

Following submission of the parties' briefs in this case, the Sixth Circuit issued a decision in which it conducted an extensive examination of the case law governing a Fourth Amendment seizure. *See Rodriguez v. Passinault*, __ F.3d __, No. 09-1949, 2011 WL 1085662 (6th Cir. March 25, 2011). The plaintiff in *Rodriguez* was not the intended target of a search or seizure but instead was an innocent passenger in a truck whose driver was fatally shot by a police officer in pursuit. Plaintiff claimed she was injured by flying glass caused by the officer's gunfire. In reversing the district court's determinations that no seizure had occurred and that the defendant was entitled to qualified immunity, the Sixth Circuit reiterated several important and closely related Fourth Amendment principles which are instructive here. First, a violation of the Fourth Amendment requires an intentional acquisition of physical control. *Id.* at *5. Second, a seizure occurs even when an unintended person is the object of the detention or taking, so long as the detention itself is willful. *Id.* at *6 (citing *Brower*, 489 U.S. at 596); *Fischer v. City of Memphis*, 234 F.3d 312, 315 (6th Cir. 2000). Third, the Fourth Amendment does not apply to § 1983 claims "which seek remuneration for physical injuries inadvertently inflicted upon an innocent party by police officers' use of force while attempting to seize a perpetrator." *Id.* at *6 (citing *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000)). However, police officers do

14

seize anyone who is a "deliberate object of their exertion of force." *Id.* (citing *Claybrook*, 199 F.3d at 359).

## VI. The Fourth Amendment Claim Should not be Dismissed.

### A. Plaintiffs have sufficiently alleged a Fourth Amendment seizure.

Applying the principles derived from the above Fourth Amendment cases to the present case, the Court finds that the allegations of the complaint, taken as true and construed in plaintiffs' favor, sufficiently allege that plaintiffs were subjected to a Fourth Amendment seizure. According to the allegations of the complaint, defendant ordered plaintiffs to "get back in the house" and then unleashed the dog before plaintiffs had fully complied with her order, causing the dog to chase plaintiffs into the premises.[2] (Doc. 1, ¶¶ 10, 11, 12).  Plaintiffs allege that Cooper's minor son was still on the doorstep when the dog charged into the house.  (*Id.*, ¶ 13). These factual allegations permit the reasonable inference that defendant was aware that T.W. and others were not out of harm's way when she unleashed the dog.  Moreover, because Bak was trained to track the residual human scent left on articles (Id., ¶ 9), it can reasonably be inferred that the dog would track any persons in the vicinity if let off the lead and that defendant knew this.  Finally, there is no indication in the complaint that the exigencies of the situation were such that there was any need for defendant to unleash the dog before bystanders had a chance to secure

---

[2]In the police department reports which defendant asks the Court to consider as part of the motion to dismiss, there are statements that defendant "advised onlookers to go inside and waited until they did so before she deployed Bak." (*See* Doc. 15, Atts. 2, 5 - "Citizen Complaint Resolution Process" disposition report and an interdepartmental memorandum regarding defendant's use of the police dog).  However, the Court finds it is inappropriate to consider defendant's statements contained in the reports on a motion to dismiss.  Defendant's version of the incident set forth in the reports is disputed by plaintiffs, and the Court is bound to accept plaintiffs' factual allegations and to draw all inferences in their favor when resolving the motion to dismiss.  *See Treesh*, 487 F.3d at 476.

their children and themselves inside their residences.  Thus, construing the allegations of the
complaint in plaintiffs' favor, as the Court must on a motion to dismiss, it can reasonably be
inferred from all of the circumstances that defendant acted intentionally to exert physical control
over plaintiffs and willfully set in motion the instrumentality for doing so by (1) ordering
plaintiff into their homes, and (2) deploying her canine partner off-lead in close proximity to
plaintiffs before they had a chance to comply with defendant's order to get inside the house.
Accordingly, plaintiffs have sufficiently pled that they were seized under the Fourth Amendment.

### B. Plaintiffs have sufficiently alleged the use of excessive force.

Defendant denies she used excessive force against plaintiffs.  Defendant acknowledges
that in some cases courts have found the release of a canine officer to constitute excessive force.
(Doc. 15 at 8, citing *Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2003) *overruled on
other grounds by Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007); *Vathekan*, 154
F.3d at 175; *Kopf v. Wing*, 942 F.2d 265, 268-69 (4th Cir. 1991); *see also Otero v. Wood*, 316 F.
Supp.2d 612, 625 (S.D. Ohio 2004) (analogizing situation where innocents bystanders were
given no opportunity to exit the area before police shot wooden baton rounds into crowd to
canine cases where no warning was given before officers used police dogs)).  However,
defendant seeks to distinguish such cases where the courts found excessive force violations on
the ground that the officers involved gave bystanders no verbal warning and no chance to clear
the area, whereas here plaintiffs purportedly admit defendant announced they "should 'get back
in the house.'" (*Id.*).  Defendant claims that plaintiffs therefore had notice as well as the time and
the opportunity to clear the area before she released Bak.  Defendant contends that because she
gave a verbal warning before releasing Bak, and because her actions allegedly complied with

16

then-current Cincinnati Police Department procedures, her actions did not constitute excessive force.

Plaintiffs claim that defendant's off-lead deployment of the police dog constituted excessive force under the circumstances. (Doc. 14 at 8-11). Plaintiffs acknowledge that the government interest of finding a misplaced weapon is legitimate. However, they contend the interest is outweighed by plaintiffs' interest in being free from unwarranted assault by a police canine. Plaintiffs allege that Cincinnati Police Department protocol mandates that article searches be conducted on-lead, and there was no exigency warranting that the search here be conducted off-lead. Plaintiffs cite *Vathekan*, 154 F.3d at 178, for the proposition that an attack by an unreasonably deployed police dog in the course of a seizure constitutes a Fourth Amendment excessive force violation. Plaintiffs also rely on *Otero*, 316 F.Supp.2d at 615, claiming the decision supports their position because like the plaintiff in *Otero*, they were not afforded the opportunity to remove themselves from harm's way before Bak was taken off-lead. Plaintiffs claim it was unreasonable for defendant to let Bak loose while several people, including young children, were still outside.

In determining whether a defendant's use of force was reasonable, the Court must balance "'the nature and quality of the intrusion on [plaintiffs'] Fourth Amendment interests' against the countervailing governmental interests at stake." *See Graham*, 490 U.S. at 396. "[L]ack of warning is such a significant factor in determining whether a use of force is objectively reasonable that a jury could find, on that basis alone, that Defendants' use of force violated the Fourth Amendment." *Otero*, 316 F.Supp.2d at 626.

17

Here, defendant had a legitimate interest in finding a missing weapon.  However, plaintiffs had a valid interest in being free from injury inflicted by a police dog.  Under the circumstances as pled, defendant's legitimate interest did not outweigh plaintiffs' health and safety interests.  There are no allegations to show either defendant or the public faced a threat which required defendant to take the police dog off-lead.  It appears defendant could have conducted the search just as effectively with the dog on-lead.  Moreover, according to the allegations of the complaint, although defendant told plaintiffs to "get back in the house," this warning was not adequate to protect plaintiffs because defendant did not give plaintiffs sufficient time to heed the warning before she deployed Bak off-lead.  *Compare Otero*, 316 F.Supp.2d at 626 (plaintiff "presented evidence that she heard no warning before shots were fired and that even the warnings that were given were inadequate either to apprise people of the danger that they faced or to give them time to disperse before being subjected to police force.").  Thus, plaintiffs have adequately pled a claim under the Fourth Amendment for the use of excessive force against them.

## C.  Defendant Should not be Granted Qualified Immunity at the Pleading Stage.

Defendant should not be granted qualified immunity at the pleading stage of this case.  It was clearly established in this Circuit at the time of the underlying incident that (1) a claim of excessive force arising during a seizure must be analyzed under the Fourth Amendment, *see Ciminillo*, 434 F.3d at 465, and (2) individuals have a Fourth Amendment right to be free from the unreasonable use of non-lethal force.  *See Edwards v. City of Martins Ferry*, 554 F.Supp.2d 797, 807 (S.D. Ohio 2008).  Here, accepting the allegations of the complaint as true and drawing all inferences in a light most favorable to plaintiffs, it would have been clear to a reasonable

18

official in defendant's position that her conduct subjected plaintiffs to excessive force in violation of their Fourth Amendment rights.  Accordingly, plaintiff's Fourth Amendment claim against defendant should not be dismissed on the basis on qualified immunity.

## VII.  Ohio Tort Claims

### A.  Assault and Battery

Defendant argues that plaintiffs' assault and battery claims should be dismissed because defendant gave a warning, which provided plaintiffs time and opportunity to clear the area before she released Bak, and her actions were appropriate under the City of Cincinnati's Procedures Manual.  (Doc. 13 at 6-7).  Defendant denies she should have known that releasing Bak would lead to the alleged offensive contact.  Defendant also denies that her actions were excessive or reckless under the circumstances.  (Doc. 15 at 10).

Plaintiffs contend they have alleged sufficient facts to make out a plausible claim that defendant acted with the requisite intent.  (Doc. 14 at 13-14).  Plaintiffs allege that defendant intentionally set Bak loose when she knew, or should have known, her action would lead to offensive contact with plaintiffs or a reasonable fear by plaintiffs that offensive contact would result.

Under Ohio law, "[a]n assault in tort is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Hale v. Vance,* 267 F.Supp.2d 725, 736 (S.D. Ohio 2003) (quoting *Vandiver v. Morgan Adhesive Co.,* 710 N.E.2d 1219, 1221 (Ohio 1998) (citation and internal quotation omitted).  A battery results when one "acts intending to cause a harmful or offensive contact, and when a harmful

contact results." *Love v. City of Port Clinton,* 524 N.E.2d 166, 167 (Ohio 1988) (citing Restatement of the Law 2d, Torts (1965) 25, § 13). "Offensive contact" is contact "which is offensive to a reasonable sense of personal dignity." *Id.* (citing Restatement of the Law 2d, Torts, supra, at 35, § 19). "[I]t is not necessary to intend the harmful result; it is sufficient to intend the offensive contact that causes the injury. *Feeney v. Eshack*, 718 N.E.2d 462, 464 (Ohio App. 9 Dist. 1998) (citing *Hunter v. Shenango Furnace Co.,* 527 N.E.2d 871, 873 (Ohio 1988)).

Plaintiffs have stated a plausible claim for assault and battery. The Court may reasonably infer that defendant warned plaintiffs to get inside (Doc. 1, ¶ 10) because she knew the dog would make unwanted contact with plaintiffs if they were outside when she took the dog off-lead. Nonetheless, according to the allegations of the complaint, defendant took the dog off-lead before plaintiffs were safely inside. (*Id.*, ¶¶ 11, 12, 13). Thus, it can reasonably be inferred that defendant acted with the intent to cause the harmful contact that resulted. Defendant's motion to dismiss the assault and battery claim should therefore be denied.

### B. Infliction of Emotional Distress

Defendant argues that plaintiffs have failed to state a plausible claim for intentional infliction of emotional distress. (Doc. 13 at 8). Defendant contends that plaintiffs have alleged no facts which tend to establish defendant's intent to cause plaintiffs emotional distress; which establish the extreme or outrageous nature of defendant's conduct; or which show the mental anguish plaintiffs suffered is very serious and of a nature that no reasonable person could be expected to endure it. Defendant argues that plaintiffs have not stated a plausible claim for negligent infliction of emotional distress because they have not alleged they were bystanders to

20

an accident or that they suffered *serious* emotional distress as a result of their encounter with defendant.

Plaintiffs contend they have stated a claim for intentional infliction of emotional distress because defendant was extremely reckless in deploying Bak off-lead when plaintiffs and their children were close by; defendant's conduct in deploying a trained police dog in close proximity to plaintiffs and their children went beyond all possible bounds of decency; and the conduct was the direct and proximate result of the physical and emotional injuries suffered by plaintiffs, which included severe emotional distress.  (Doc. 14 at 15).  Plaintiff Terri Cooper contends that she has stated a claim for negligent infliction of emotional distress because she witnessed her 1 ½ year old son being trampled by a police dog, which is trained to attack; T.W. struck his head on the threshold and injured it when the dog knocked him over; Cooper shares a close relationship with T.W. as his mother; and Cooper has suffered severe emotional distress following the incident.[3]

The elements of a claim for intentional infliction of emotional distress are: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' . . .  3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'"

---

[3]Terri Cooper is the only plaintiff pursuing a claim for negligent infliction of emotional distress.  (*See* Doc. 14 at 16, n.2).

*Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio App. 8 Dist. 1983).

Ohio law recognizes a cause of action for the negligent infliction of serious emotional distress. *Schultz v. Barberton Glass Co.*, 447 N.E.2d 109 (Ohio 1983).  For a bystander to an accident to recover for negligent infliction of serious emotional distress, "the emotional injuries sustained must be found to be both serious and reasonably foreseeable." *Paugh v. Hanks,* 451 N.E.2d 759, 761, syll. ¶ 3a (Ohio 1983).  "Serious emotional distress" is "emotional injury which is both severe and debilitating. [It] may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* at syll. ¶ 3b.  The Ohio Supreme Court in *Paugh* listed as some examples of "serious emotional distress" such disorders as "traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.* at 765 (citations omitted).

Here, plaintiffs have failed to state a plausible claim for intentional infliction of emotional distress.  Plaintiffs allege that the police dog ran over T.W. and caused him to suffer injuries to his forehead and back.  (Doc. 1, ¶ 19).  Plaintiffs allege the dog chased Allen up the stairs and caused her to fall and injure herself.  (*Id.*).  Plaintiffs allege Cooper and T.W. suffered emotional distress and Allen, who had a pre-existing fear of dogs, was terrified by her encounter with the dog.  (*Id.*).  While it is plausible that plaintiffs suffered some emotional distress and fright as a result of their encounter with the police dog as described in the complaint, it is not plausible that the emotional distress they experienced was of a degree and "a nature that 'no reasonable [person] could be expected to endure it.'" *See Pyle*, 463 N.E.2d at 103.  Nor does the complaint describe emotional injury that approaches this degree of severity.  Thus, defendant's motion to dismiss should be granted on the claim for intentional infliction of emotional distress.

22

Similarly, the complaint does not adequately plead a claim for negligent infliction of emotional distress on behalf of plaintiff Cooper. There is no indication in the complaint that Cooper has suffered "severe and debilitating" emotional injury. Nor do the allegations of the complaint suggest that "a reasonable person, normally constituted," would be "unable to cope adequately with the mental distress" resulting from the incident Cooper witnessed. Thus, defendant's motion to dismiss should be granted as to this claim.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's motion to dismiss be **DENIED** as to plaintiffs' Fourth Amendment claim brought under 42 U.S.C. § 1983 (First Claim) and plaintiffs' claim for assault and battery brought under Ohio law (Second Claim).

2. Defendant's motion to dismiss be **GRANTED** as to plaintiffs' claims for intentional and negligent infliction of emotional distress (Third Claim).

Date: 4/13/2011

Karen L. Litkovitz

United States Magistrate Judge

23

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TERRI COOPER, et al.

    Plaintiffs

vs

JENNIFER ERNST,

    Defendant

Case No. 1:10-cv-271

Weber, J.

Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

24